1  STEVEN D. SABEL, ESQ.
   NEVADA BAR NO. 15810
2  **SABEL LAW APC**
   304 S Jones Blvd Suite 1309,
3  Las Vegas, NV 89107
   Phone: 725-525-5583
4  Email: ssabel@sabellaw.com

5  JASON M. INGBER (California SBN 318323) *Pending Pro Hac Vice*
   **INGBER LAW GROUP**
6  3580 Wilshire Blvd., Suite 1260
   Los Angeles, California 90010
7  Tel: (213) 805-8373
   E-mail: ji@jasoningber.com

8  Attorneys for Plaintiff CATALINA APARTMENTS LLC,

9

10                    **UNITED STATES DISTRICT COURT**

11                      **FOR THE DISTRICT OF NEVADA**

12

13  CATALINA APARTMENTS LLC,          | Case No.: 2:25-CV-2532
    individually and on behalf of all others
14  similarly situated,                |
                                       | **CLASS ACTION COMPLAINT**
15  Plaintiff,                         |
                                       |   1) **FRAUD**
16  v.                                 |   2) **BREACH OF CONTRACT**
                                       |   3) **BREACH OF IMPLIED**
17  REPUBLIC SERVICES, INC.            |      **COVENANT OF GOOD FAITH**
                                       |      **AND FAIR DEALING**
18           Defendant.                |   4) **UNJUST ENRICHMENT**
                                       |   5) **VIOLATION OF NEVADA**
19                                     |      **DECEPTIVE TRADE**
                                       |      **PRACTICES ACT**
20
                                       |
21                                     | **JURY TRIAL DEMANDED**

22

23  Plaintiff CATALINA APARTMENTS LLC,  ("Plaintiff") pleads as follows:

24                            **INTRODUCTION**

25
26  1.      Plaintiff Catalina Apartments LLC ("Plaintiff"), individually and on behalf of all others

27  similarly situated, brings this class action against Defendant Republic Services, Inc. ("Republic

28  Services" or "Defendant") for systematic fraudulent billing practices, breach of contract, unjust

                                    - 1 -
                         **CLASS ACTION COMPLAINT**

enrichment, violations of Nevada's Deceptive Trade Practices Act, and breach of the implied covenant of good faith and fair dealing.

2.    For at least the past four years, Defendant has engaged in a systematic scheme of charging multi-family residential properties for "waste/recycling overage" fees regardless of whether any actual overflow or overfill conditions exist.

3.    This fraudulent billing practice results in improper charges to multi-family residential properties throughout Nevada, constituting a pattern of unfair, deceptive, and fraudulent business practices.

4.    Defendant's own photographic "evidence" that purports to support its overage charges reveals the fraudulent nature of its billing scheme. Defendant on multiple occasions, upon request, provided still-images off their own truck-mounted camera –to justify overage charges—which regularly depict dumpsters that are not overfilled, with waste contained within the dumpster walls, and conveys plainly that the dumpster has waste levels well below the rim. Such photographic evidence, produced by Defendant itself, demonstrates consistent knowledge of their improper charges to customers for non-existent overages.

5.    When confronted with this evidence, after long arduous phone calls, the Defendant's representatives routinely admit fault.

6.    For example, on November 14, 2025, Plaintiff's property manager, Yaakov Freeman, received an automated "Overage Notification" email from Defendant regarding the property at 6363 Clarice Avenue, Las Vegas, Nevada. The notification stated that "waste overage for one or more of your dumpsters has been recorded" and included photographs purportedly supporting the overage determination. Mr. Freeman contacted Defendant's customer service to dispute the charges. Defendant's representative apologized and credited Plaintiff's account for the full amount of $153.03, attributing the false charges to a "sensor" on the truck that allegedly "picked it up as an

**CLASS ACTION COMPLAINT**

overage." This admission confirms that Defendant's automated billing system generates fraudulent overage charges without any actual verification of overflow conditions, and that Defendant is aware of this defect yet continues to employ the faulty technology.  This admission conflicts with other reasons proffered by Defendant's representatives on other similar phone calls and confirms that Defendant's automated billing system generates fraudulent overage charges without any actual verification of overflow conditions.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which: (a) the matter in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed class contains more than 100 members; and (c) minimal diversity exists because members of the proposed plaintiff class include citizens of Nevada, which is a state different from Defendant, a citizen of Delaware and Arizona. Additionally, Plaintiff is a citizen of Nevada through its sole member, Catalina Apartments LLC, and Defendant is a citizen of Delaware and Arizona.

8.    This Court has personal jurisdiction over Defendant because Defendant regularly conducts substantial business in Nevada, maintains operations in Nevada, and the acts complained of occurred in Nevada.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and Defendant conducts substantial business in this District.

## PARTIES

10.    Plaintiff Catalina Apartments LLC is a Nevada limited liability company that owns and operates a multi-family residential property located at 6363 Clarice Avenue, Las Vegas, Nevada

**CLASS ACTION COMPLAINT**

89107-1314, and is a customer of Defendant's waste management services under Account Number 3-0620-1728870.

11.     Defendant Republic Services, Inc. is a Delaware corporation with its principal place of business at 18500 North Allied Way, Phoenix, Arizona 85054. Defendant is thus a citizen of Delaware and Arizona for diversity purposes. Defendant is one of the largest waste management companies in the United States, providing waste collection, recycling, and disposal services. Defendant operates in the City of Las Vegas pursuant to a Franchise Agreement with the City of Las Vegas, which governs the terms and conditions of Defendant's waste collection services within the franchise area.

**FACTUAL ALLEGATIONS**

**A.  Defendant's Systematic Overcharge Scheme**

12.    Defendant provides waste collection and recycling services to multi-family residential properties throughout Nevada pursuant to service contracts.

13.    Defendant operates its waste collection services in Las Vegas pursuant to a franchise agreement with the City of Las Vegas. Under the franchise agreement, Defendant is obligated to provide waste collection services in accordance with specified standards and is prohibited from engaging in unfair, deceptive, or fraudulent billing practices.

14.    As part of these contracts, Defendants purports to charge additional "overage" fees when waste containers exceed their capacity or when additional waste is placed outside designated containers.

15.    However, Defendant has implemented a systematic practice of charging these "overage" fees regardless of whether any actual overflow condition exists.

16.    Defendant utilizes automated sensor technology mounted on its collection trucks that purportedly detects overflow conditions. However, this technology is unreliable and generates false

4

**CLASS ACTION COMPLAINT**

positive readings, resulting in fraudulent overage charges to customers. When customers challenge these charges with photographic evidence showing no actual overflow, Defendant admits the "sensor" erroneously flagged the condition and credits the account—but only after customers expend time and effort to dispute the charges.

17.    In June of 2025, prior to Plaintiff realizing Defendant's scheme, Plaintiff commissioned a company who's specific services offered was to compact dumpsters, so as to ensure no overage charges. It was as a result of this service that Defendant's scheme was brought to light.

18.    A review of one of Defendant's Invoices to Plaintiff, for example, Number 0620-048878419, dated July 31, 2025, charged Plaintiff $408.08 in "Current Invoice Charges" under Contract Number 9620001 (C15), including: Waste/Recycling Overage on 07/07: 3.0000 units at $145.38; Waste/Recycling Overage on 07/14: 5.0000 units at $242.30; Las Vegas Environmental Surcharge: $19.39; Commerce Tax Recovery Fee: $1.01.

19.    Invoice Number 0620-049734505, dated October 31, 2025, charged Plaintiff $153.03 in overage-related fees under Contract Number 9620001 (C15), including: Waste/Recycling Overage on 10/13: 1.0000 units at $48.46; Waste/Recycling Overage on 10/17: 1.0000 units at $48.46; Waste/Recycling Overage on 10/20: 1.0000 units at $48.46; Las Vegas Environmental Surcharge: $7.26; and Commerce Tax Recovery Fee: $0.39. This invoice demanded payment by November 20, 2025

20.    Defendant's own photographic evidence definitively disproves the October 13, 2025 overage charge. Defendant's truck-mounted camera captured an image at Plaintiff's property at 9:48:59 AM on October 13, 2025—the same date for which Defendant assessed an overage fee. The photograph, produced by Defendant itself, shows waste contained entirely within the dumpster walls, with the fill level at or below the rim of the container. No waste is spilling over the sides. No waste is on the ground. The dumpster lid area is unobstructed. Despite this photographic evidence—captured by

Defendant's own equipment and in Defendant's own possession—Defendant charged Plaintiff $48.46 for an "overage" that demonstrably did not exist.

21.     When Mr. Freeman contacted Defendant to dispute the October 2025 overage charges, Defendant did not investigate, did not review its own photographic evidence, and did not contest the dispute. Instead, Defendant's representative immediately apologized and issued a full credit, admitting that the charges resulted from a "sensor" malfunction. Defendant's automated credit confirmation, sent at 1:52 PM on November 14, 2025, confirmed a credit of $153.03—the exact amount of the disputed overage charges. This pattern of immediate capitulation upon challenge demonstrates that: (a) Defendant knows its sensor technology generates false overage determinations; (b) Defendant bills customers for these false overages without any quality control or human verification; (c) Defendant's business model depends on customers paying fraudulent charges without dispute; and (d) Defendant only reverses charges when customers expend the time and effort to challenge them.

22.     Defendant's automated "Overage Notification" email, sent to Plaintiff on November 14, 2025, reveals the systematic nature of Defendant's scheme. The notification defines an "overage" as occurring "when a dumpster is overfilled with waste, possibly preventing the lid from closing properly" or when waste "may be spilling onto the ground below." Defendant's own photograph from October 13, 2025, shows neither condition: the waste is contained within the dumpster, and no waste appears on the ground. Defendant charged Plaintiff for an overage despite possessing photographic evidence that contradicted its own definition of what constitutes an overage. This demonstrates that Defendant's overage charges are generated automatically without any comparison to Defendant's stated criteria.

**CLASS ACTION COMPLAINT**

23.     These charges appear on an invoice demanding payment by August 20, 2025, with no documentation, photographic evidence, or explanation of what constituted the alleged "overage" or what the unit measurements (3.0000 and 5.0000) actually represent.

24.     Upon information and belief, these overage charges were assessed without any verification that containers were overfilled or that excess waste existed.

25.     This practice is not isolated to Plaintiff and represents Defendant's standard operating procedure for all properties it services.

26.     An audit of available evidence of systematic overcharging demonstrates that over a fourteen-month period from October 2023 to December 2024, Plaintiff was charged overage fees on eighty-eight separate occasions across eight invoices, totaling thousands of dollars in disputed charges. These charges demonstrate an impossible pattern: Republic Services claimed overages occurred on average two to three times per week, including charges just two days apart, such as October 2, 4, and 6, 2023, and December 2, 4, and 6, 2024. The frequency peaked in October 2023 with twelve overage incidents in a single month, and again in December 2024 with twelve incidents. This suggests the charges were arbitrarily assessed without actual verification.

27.     Photographic evidence obtained from Defendant related to the July 7, 2025 service, demonstrates Defendant's arbitrary and fraudulent billing practices. On that date, Defendant's truck-mounted camera captured an image at Plaintiff's property at 9:44:06 AM, and Plaintiff was charged an overage fee. However, Defendant's own photograph reveals the fraudulent nature of this charge: the image shows a dumpster that was clearly NOT overfilled. The photograph depicts the waste level well below the rim of the container. Despite this, Defendant charged Plaintiff an overage fee for this dumpster. Such photographic evidence is not isolated to this one incident, but has been obtained for multiple instances and proves that Defendant applies overage charges regardless of actual fill levels, confirming the arbitrary nature of the billing scheme.

**CLASS ACTION COMPLAINT**

**B. Pattern of Deceptive Practices**

28.     Defendant's billing statements are deliberately designed to obscure these improper charges by listing overage charges with minimal description, using vague unit measurements without explanation, failing to provide documentation or evidence of actual overflows, and combining multiple charges to make individual assessment difficult. The invoices reveal deliberate obfuscation. Unit measurements vary wildly without explanation: charges range from 1.0000 units ($45.25–$46.16) to 10.0000 units ($461.60). Price per unit inexplicably varies, as does the application of per unit instances.

29.     Defendant's use of automated sensor technology to generate overage charges without human verification compounds this deception. The sensors generate false positive readings, and Defendant bills customers based on these readings without any manual review or photographic confirmation that an actual overflow condition exists. When Defendant *does* provide photographs to overage notifications, those photographs frequently contradict the overage determination.

30.     In instances where Plaintiff has called Defendant's customer service number listed on the invoice to inquire about these charges, Defendant's representatives provide vague or contradictory explanations.

31.     Upon information and belief, Defendant has no set criteria or standards for determining when to impose overfill or overage charges. When customers contact Defendant's customer service department to inquire about the specific standards or criteria that trigger overage charges, representatives are unable to provide clear, consistent, or specific guidelines.

32.     This lack of defined criteria is particularly egregious because if Defendant's own customer service representatives cannot articulate the standards for overage charges, it is impossible for the pickup crews in the field to apply any consistent or objective standard when determining whether to report an overfill condition.

**CLASS ACTION COMPLAINT**

33.    The absence of clear criteria renders these charges wholly arbitrary and capricious, allowing Defendant to impose fees at will without any objective basis or justification.

34.    This arbitrary charging system is inherently unfair and deceptive because customers cannot modify their waste disposal practices to avoid charges when no clear standards exist, pickup crews and automated sensors have no objective guidelines to follow leading to random and inconsistent charge assessments, the lack of standards makes it impossible for customers to dispute charges effectively, and Defendant can impose charges without accountability or verification.

35.    Defendant knows that many property managers and owners pay these charges without question due to the relatively small individual amounts and the essential nature of waste collection services.

### C. Damages to Class Members

36.    As a direct result of Defendant's systematic overcharging scheme, Plaintiff and class members have paid millions of dollars in improper fees over the years since Defendant entered its franchise agreement.

37.    These overcharges typically range from $100 to $500 per month per property, or more, depending on the size of the property. This has resulted in thousands of dollars, if not tens of thousands of dollars, in improper charges annually for each affected property. The billing pattern reveals a calculated scheme to maximize revenue. Despite already paying substantial monthly service fees ranging from $8,103.96 to $8,542.98 per quarter, Plaintiff faced additional overage charges exceeding $1,400 in some months. Plaintiff's November 30, 2023 invoice shows how Republic Services compounded damages by imposing a late fee of $28.58 on disputed overage charges, forcing customers to pay questionable fees to avoid credit damage. The December 2024 invoice alone contained $3,277.36 in overage charges across twelve alleged incidents, nearly forty

9

**CLASS ACTION COMPLAINT**

percent of the quarterly service fee, demonstrating the arbitrary and punitive nature of these assessments.

38.    Moreover, because of Defendant's arbitrary and unpredictable overage charging practices, Plaintiff and Class members are forced to maintain excess dumpster capacity as a defensive measure against potential overage fees.

39.    Specifically, Plaintiff and Class members cannot optimize their waste management costs by reducing the number of dumpsters to match their actual waste generation because they must maintain extra dumpsters to have any chance of avoiding the arbitrary spillage fees.

40.    This coercive practice results in additional damages as Plaintiff and Class members pay for unnecessary dumpster rentals they would not need but for Defendant's predatory charging scheme.

41.    The fear of arbitrary overage charges effectively forces customers to over-purchase Defendant's services, creating a windfall for Defendant through both the improper overage charges themselves and the forced purchase of excess dumpster capacity that would be unnecessary under a fair and transparent billing system.

42.    This dual-revenue scheme demonstrates the particularly egregious nature of Defendant's conduct, as it profits from both the threat and the execution of arbitrary charges. Quantifiable harm to Class members is further demonstrated by invoice evidence showing overage charges ranging from $90.50 to $1,667.75 per month. Annual overage charges for Plaintiff alone exceeded $10,000 in some years. Environmental surcharges and tax recovery fees are calculated on top of disputed overage charges, compounding the fraud.

### D. Statistical Impossibility

43.    Statistical analysis reveals implausibility. Based on the invoice evidence, Republic Services claims Plaintiff's dumpsters were overfilled on approximately thirty to forty percent of all collection days. This pattern is statistically implausible for a professionally managed multi-family

**CLASS ACTION COMPLAINT**

property that has consistent tenant occupancy, generates predictable waste volumes, and would have adjusted service levels if legitimate overflows occurred this frequently.

### E. Photographic Evidence of Bad Faith

44.    Defendant's own truck-mounted camera photos, which Defendant maintains and has provided to Plaintiff on multiple occasions, demonstrates the fraudulent nature of Defendant's billing scheme.

45.    A review of these photos show instances where the waste level is clearly and substantially BELOW the rim of the subject dumpster. Despite dumpsters being nowhere near capacity, Defendant charges an overage fee, and takes a photo to purportedly jutify such overage.

46.    When contacted, Defendant's representative routinely admit that the charges are generated by a "sensor" on the truck that erroneously "picked it up as an overage.

47.    Such admissions are significant for several reasons:

    a.  They confirm Defendant relies on automated technology rather than human verification to generate overage charges;

    b.  They confirm that this technology is unreliable and generates false positive readings, for which Defendant is aware of the issue and complicit with it's ongoing use;

    c.  They confirm that Defendant bills customers based on these unreliable readings without any quality control or verification process;

    d.  They confirm that Defendant's business model depends on customers paying fraudulent charges without dispute.

48.    Defendant's willingness to immediately credit the account upon challenge—without investigation or dispute—further confirms that Defendant knows its overage charges are frequently illegitimate.

**CLASS ACTION COMPLAINT**

49.     Plaintiff did not discover, and could not have discovered through reasonable diligence, the full scope of Defendant's fraudulent billing scheme until June 2025, when Plaintiff engaged a third-party compaction service and began systematically reviewing overage charges. Prior to that time, Defendant's deliberately vague invoices, inconsistent customer service explanations, and failure to proactively provide photographic evidence concealed the fraudulent nature of the charges. The statute of limitations on Plaintiff's and Class members' claims was therefore tolled until June 2025 under the discovery rule. Additionally, Defendant's active concealment of its billing practices—including its failure to disclose the unreliability of its sensor technology and its practice of immediately crediting disputed charges without investigation—constitutes fraudulent concealment that further tolled the limitations period.

50.     Plaintiff continues to contract with Defendant for waste management services and continues to receive invoices. Absent injunctive relief, Plaintiff and Class members will continue to be subjected to Defendant's fraudulent billing practices. Plaintiff and Class members have no adequate remedy at law because they cannot practically terminate their contracts with Defendant due to the essential nature of waste collection services and Defendant's franchise agreement with the City of Las Vegas, which grants Defendant exclusive or near-exclusive rights to provide waste services in substantial portions of the franchise area.

51.     Defendant's conduct was oppressive, fraudulent, and malicious within the meaning of NRS 42.005. Defendant acted with conscious disregard for the rights of Plaintiff and Class members by: implementing an automated billing system it knew generated false charges; continuing to bill customers based on unreliable sensor readings despite knowing those readings were frequently erroneous; and profiting from the knowledge that most customers would pay fraudulent charges rather than dispute them. Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant and deter similar conduct.

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following proposed class:

**All persons and entities in Nevada that (a) contracted with Republic Services, Inc. for waste management services, and (b) were charged "overage" "overflow" "overfill" or similar excess waste fees at any time from June 2016 through the date of class certification (the "Class").**

53.    Excluded from the Class are: Defendant and its affiliates, subsidiaries, officers, and directors; any judicial officer presiding over this matter; and any person or entity that timely opts out of the Class.

54.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of properties in Nevada serviced by Defendant, making the Class members number in the thousands.

55.    **Commonality**: Common questions of law and fact exist as to all members of the Class, including but not limited to: whether Defendant systematically charges overage fees without verifying actual overflow conditions; whether Defendant's automated sensor technology generates false positive readings resulting in fraudulent charges; whether Defendant charges overage fees even when its own photographic evidence shows no overflow condition; whether Defendant has any objective criteria for imposing overage charges; whether the arbitrary nature of Defendant's charging practices constitutes fraud or breach of contract; whether Defendant's practices force customers to maintain excess dumpster capacity; whether Defendant's billing practices constitute fraud or breach of contract; whether Defendant was unjustly enriched by its overcharge scheme; whether Defendant violated Nevada's Deceptive Trade Practices Act; whether Defendant breached the implied covenant of good faith and fair dealing; and the appropriate measure of damages including both overage fees and costs of excess capacity.

56.    **Typicality**: Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all Class members were subjected to the same systematic overcharging scheme and arbitrary billing practices.

57.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class action litigation and intends to prosecute this action vigorously.

58.    **Predominance**: Questions of law and fact common to Class members predominate over any questions affecting only individual members.

59.    **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The damages suffered by individual Class members, while significant in the aggregate, may not be sufficient to justify individual litigation against a large corporate defendant.

**CAUSES OF ACTION**

**COUNT I - FRAUD**

60.    Plaintiff incorporates all preceding paragraphs.

61.    Defendant made false representations to Plaintiff and Class members by billing for overage charges that did not correspond to actual overflow conditions and without any objective criteria for such charges.

62.    The fraudulent nature of Defendant's representations is demonstrated with particularity by Invoice Number 0620-049734505. On that invoice, dated October 31, 2025, Defendant represented that Plaintiff's waste containers were overfilled on October 13, 2025, and that Plaintiff owed $48.46 for this overage. This representation was false. Defendant's own truck-mounted camera photograph, taken at 9:48:59 AM on October 13, 2025, shows the dumpster was not overfilled—the waste level was at or below the rim, fully contained within the dumpster walls. Defendant knew this

14

**CLASS ACTION COMPLAINT**

representation was false at the time it issued the invoice because: (a) Defendant possessed the photograph showing no overflow condition; (b) Defendant's automated system generated the charge based solely on an unreliable sensor reading; and (c) when challenged, Defendant immediately admitted the "sensor" had erroneously "picked it up as an overage" and credited the full amount without dispute or investigation.

63.    These representations were material to Plaintiff's and Class members' payment decisions.

64.    Defendant knew these representations were false or made them with reckless disregard for their truth, as evidenced by its inability to articulate any clear standards for these charges when contacted at its customer service number, and by Defendant's admission that its "sensor" technology generates erroneous charges.

65.    Defendant intended for Plaintiff and Class members to rely on these false representations and pay the fraudulent charges.

66.    Plaintiff and Class members justifiably relied on these representations and paid the charges.

67.    As a direct and proximate result, Plaintiff and Class members suffered damages, including both improper overage fees and the costs of maintaining unnecessary excess dumpster capacity.

### COUNT II – BREACH OF CONTRACT

68.    Plaintiff incorporates all preceding paragraphs.

69.    Plaintiff and Class members entered into valid contracts with Defendant for waste management services.

70.    These contracts required Defendant to charge overage fees only when actual overflow conditions existed and implied a duty of good faith that charges would be based on objective, verifiable criteria.

**CLASS ACTION COMPLAINT**

71.     Defendant breached these contracts by charging overage fees without regard to actual conditions and without any objective standards, including charging for alleged overages on multiple dates per week.

72.     Defendant's breach forced Plaintiff and Class members to purchase excess services to attempt to avoid arbitrary charges.

73.     As a direct and proximate result, Plaintiff and Class members suffered damages.

### COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

74.     Plaintiff incorporates all preceding paragraphs.

75.     Under Nevada law, every contract contains an implied covenant of good faith and fair dealing.

76.     Plaintiff and Class members entered into contracts with Defendant for waste management services. Additionally, Defendant operates pursuant to a franchise agreement with the City of Las Vegas, which governs the provision of waste services to properties within the franchise area, including Plaintiff's property.

77.     The implied covenant of good faith and fair dealing required Defendant to act honestly and fairly in performing its contractual obligations, including the obligation to charge fees only when legitimately earned.

78.     Defendant breached the implied covenant of good faith and fair dealing by:

    a.   Implementing automated sensor technology to generate overage charges without any quality control or verification process;

    b.   Billing customers for overages based on sensor readings that Defendant knew or should have known were unreliable;

**CLASS ACTION COMPLAINT**

c.  Charging overage fees even when Defendant's own photographic evidence showed no overflow condition or showed dumpsters below capacity;

d.  Failing to implement reasonable safeguards to prevent false overage charges;

e.  Requiring customers to affirmatively dispute charges to receive credits for erroneous billing, rather than implementing systems to ensure accurate billing;

f.  Profiting from the knowledge that most customers would pay fraudulent charges rather than incur the time and expense of disputing them;

g.  Deliberately obscuring billing information to make it difficult for customers to identify and dispute improper charges.

79.    Defendant's conduct violated the franchise agreement's requirement that Defendant provide services in accordance with specified standards and refrain from unfair billing practices.

80.    As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class members have suffered damages.

### COUNT IV – UNJUST ENRICHMENT

81.    Plaintiff incorporates all preceding paragraphs.

82.    Plaintiff pleads this claim in the alternative to its contract-based claims. To the extent the Court determines that no valid, enforceable contract governs the overage charges at issue, or that the contract does not address the subject matter of the disputed charges, Plaintiff is entitled to recover under a theory of unjust enrichment.

83.    Plaintiff and Class members conferred a benefit on Defendant by paying overage charges that were arbitrarily imposed without objective criteria.

84.    Plaintiff and Class members also conferred additional benefits on Defendant by paying for excess dumpster capacity they maintained solely to avoid arbitrary overage charges.

85.    Defendant appreciated and accepted these benefits.

17

**CLASS ACTION COMPLAINT**

86.     Defendant's retention of these payments is unjust and inequitable under the circumstances, particularly given the arbitrary and standardless nature of the charges and the coercive effect on customers' purchasing decisions.

87.     Defendant should be required to disgorge all improperly collected overage fees and excess service charges.

### COUNT V – VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT

(NRS § 598.0915 et seq.)

88.     Plaintiff incorporates all preceding paragraphs.

89.     Defendant engaged in deceptive trade practices by knowingly making false representations in the course of its business and by imposing charges without disclosing the lack of objective criteria or the unreliability of its automated sensor technology.

90.     Defendant's systematic overcharging scheme and failure to maintain or disclose clear standards for charges constitutes a deceptive trade practice under Nevada law.

91.     Defendant's practices coerced customers into purchasing unnecessary services to avoid arbitrary penalties.

92.     These practices were likely to and did mislead consumers acting reasonably under the circumstances.

93.     The Nevada Deceptive Trade Practices Act, NRS 598.0903 et seq., applies to Defendant's conduct. The Act prohibits any "person" from engaging in deceptive trade practices "in the course of his or her business or occupation." NRS 598.0915. The statute does not limit its protections to consumer transactions or exclude commercial entities. Defendant is a "person" within the meaning of the Act, and Defendant's systematic imposition of fraudulent overage charges constitutes conduct "in the course of [its] business." To the extent any Class members are natural persons or small business owners, the Act's consumer protections apply with full force to those Class members.

**CLASS ACTION COMPLAINT**

94.    Plaintiff and Class members suffered ascertainable losses as a result of Defendant's

deceptive practices, including overage fees and costs of excess capacity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully requests that this Court:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23;

B. Appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

C. Award actual damages in an amount to be determined at trial, including all improperly

assessed overage fees, costs of unnecessary excess dumpster capacity maintained to avoid

arbitrary charges, and all other consequential damages flowing from Defendant's scheme;

D. Award punitive damages as permitted by law;

E. Order disgorgement of all improperly collected overage fees and excess service charges;

F. Enjoin Defendant from continuing its systematic overcharging practices;

G. Establish a court-supervised audit of all overage charges and require Defendant to

implement photographic documentation with human verification for any future overage

claims;

H. Require Defendant to disable or recalibrate its automated sensor technology to prevent

future false overage charges, or alternatively, require human verification of all sensor-

generated overage determinations before billing;

I. Appoint an independent monitor to oversee Defendant's billing practices;

J. Award attorneys' fees and costs pursuant to applicable law;

K. Award pre-judgment and post-judgment interest as permitted by law;

L. Grant such other and further relief as this Court deems just and proper.

**CLASS ACTION COMPLAINT**

M. Order Defendant to produce all photographs captured by its truck-mounted cameras corresponding to overage charges assessed against Class members during the Class Period, so that the Court and Class members may compare Defendant's photographic evidence against its billing records.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: December 19, 2025                    SABEL LAW APC

                                            */s/ Steven Sabel*
                                            Steven D. Sabel, Esq.
                                            Attorney for Plaintiff

**CLASS ACTION COMPLAINT**